(Hamilton County Court of Common Pleas.)

THE CIGAR MAKERS' PROTECTIVE UNION NO. 4 v. JOHN R. LINDNER.

---

1. The law for the protection of labels adopted by labor unions to designate the product of their members (89 Ohio St. 166) is constitutional.
2. Such label adopted by a labor union would be protected under that statute by enjoining the unauthorized use of the same at the suit of such labor union although such union does not itself manufacture or deal in the respective article.
3. The statements of a label recommending the goods as made by a first-class workman, and stating that the organization is opposed to inferior, rat-shop, coolie, prison, and filthy tenement-house workmanship, are lawful, and not objectionable as against public policy.

---

WRIGHT, J.

Upon March 30, 1892, the General Assembly of the State of Ohio passed (89 O. L., 166), an act in part as follows:

"Sec. 1. That every union or association of workingmen or women, adopting a label, mark, name, brand, or device, intending to designate the products of the labor of members of such union or association of workingmen or women, shall, in order to obtain the benefits of this act, file duplicate copies of such label, mark, name, brand, or device in the office of the Secretary of State, who shall, under his hand and seal, deliver to the party filing or registering the same, a certified copy and a certificate of the filing thereof, for which he shall receive a fee of one dollar.

"Sec. 2. Every union or association of workingmen or women adopting such label, mark, name, brand, or device, and filing the same as specified in the first section of this act, may proceed by suit in any of the courts of record in the state, to enjoin the manufacture, use, display or sale of counterfeit or colorable imitations of such label, mark, name, brand or device, or of goods bearing the same; and the court having jurisdiction of the parties shall grant an injunction restraining such wrongful manufacture, use, display or sale of such counterfeits or colorable imitations, and of goods bearing the same, and shall award to the complainants such damages resulting from such wrongful manufacture, use, display or sale, as

may be proved, and shall require the defendant to pay to the complainants the profits derived from such wrongful manufacture, use, display or sale, and both profits and damages."

The plaintiff, an incorporated association of cigar makers, has adopted a label to be placed upon boxes containing cigars made by its members, and complied with the requirements of the act by registration, etc.

The defendant, a cigar maker, admits the unauthorized, deliberate, continual and extensive use of an exact counterfeit of this label upon the boxes containing the cigars made at his establishment.

The application is for an injunction. In addition to some scrolls and devices, the following words are printed upon the label:

"This certifies that the cigars contained in this box have been made by a first-class workman, a member of the Cigar Makers' International Union of America, an organization opposed to inferior, rat shop, coolie, prison, or filthy tenement house workmanship. Therefore we recommend these cigars to all smokers throughout the world."

The defendant's counsel urges that the presence of these words upon the label deprives it of the right to be protected, because against public policy to maintain such a label, claiming that it attacks the goodness and fitness of all non-union made cigars, and brands all such as inferior and as in one or the other of the condemned classes.

Reliance is placed upon the authority of the decision of the Supreme Court of Pennsylvania in the case of Joseph McVey et al. v. John H. Brendel, reported in 144 Pa. St. 235, wherein the court was called upon to determine the right of a branch of the Cigar Maker's International Union to enjoin the use of a fac simile label by Brendel.

It is to be remarked and remembered, that no state legislation upon the subject, like the Ohio statute, had been had in Pennsylvania, wherefore the decision of the learned court was upon the law as it existed independent of legislative enactment. The injunction was refused and the bill dismissed. Three grounds for the decision may be noted:

1st. That the organization that devised and owned the label was not engaged in mercantile business; was neither a manufacturer, nor a dealer in cigars, and hence had no trade in which a trade-mark could be used.

2d. That, as an injunction can issue only at the suit of the owner of the device infringed, and the ownership of the label was admittedly in the Cigar Makers' International Union, the officers of a local tributary association, subordinate to and a parcel of the Cigar Makers' International Union, had no standing to maintain a bill to enjoin the imitation of the label.

The reasoning of the able and learned court in the establishment of these two propositions is irrefutable, but it is exactly these features of the then existing law that the statute of Ohio was designed to abrogate, and which it in express terms obliterates; hence they cannot apply to the case at bar; but in the reasoning which is adduced, to argue the label one neither proper to be adopted by a union or to be protected by the law, we are unable to concur; this is the third ground of the decision.

The distinguished court, upon page 247, et seq., says: "It (the label) inures to every one of the many thousands of workmen who make up the membership of the union, and it certifies in the name of the union that the cigars in the box on which it is placed were made by a first-class workman, a member of the Cigar Makers' International Union; who this first-class workman was, where he lived, for whom he worked, the label does not tell. He is endorsed as a first-class workman because he is a member of the union. As to all who are not members the label proceeds to define the position of the organization that issues it by describing their work

as inferior, rat shop, coolie, prison or filthy tenement house workmanship. * * * It says to the public, in spirit and effect, buy the cigars that bear this label because they were made by a member of this union; do not buy those not bearing it because they were made by workmen who do not belong to us. Such cigars are the product of inferior, rat shop, coolie, prison or filthy tenement house workmanship. It is the request of a powerful organization to all smokers throughout the world to take sides with it in its contest with those who are outside of its membership by refusing to buy the work of such persons. It is an attempt to use the public as a means of coercion upon them to unite with the union in order to find a market for their goods or their labor."

This language is a severe and proably a just condemnation of all such labels as it describes, but does the label in the case, and in the case at bar, contain that which merits the condemnation?

It is true that the label certifies that "the cigars in the box were made by a first-class workman," and "because he is a member of the union;" yet in such certificate there is no criticism upon, nor condemnation of the product to any other workman. The words can be said to apply only to that to which they make some mention, "union made cigars;" they can not be said to derogate from that of which they make neither direct nor indirect mention, to-wit, "non-union" work; they are no more than a commendation of the work of the union. If commendation of one's own is said to be, per se, a slander to that of others, competitors, then all mercantile advertisements, of whatsoever nature they may be, must be not only criticized, but condemned as wrongful and against public policy the moment they proclaim a commendation of the wares of the advertiser. A merchant seeking to sell would violate the rights of his competitors and of the public in general by suggesting to the customer that his goods were fit to be purchased.

Proceeding further, the learned court asserts:

"As to all who are not members, the label proceeds to define the position of the organization that issues it, by describing their work as inferior, rat shop, coolie, prison or filthy tenement house workmanship."

Now, denial is just as positive as assertion, and assertion cannot prevail against denial without reason to sustain it; for the existence of such reason we must consult the label. The words there are, "an organization opposed to inferior, rat shop, coolie, prison or filthy tenement house workmanship." Therefore we recommend these cigars to all smokers throughout the world. Thus it is made to appear that there is no reference to non-union work because it is non-union work, but a statement that the organization is opposed to a certain class or classes of inferior work, because it is inferior, not because it is non-union; there is no semblance of a statement, direct or implied, that non-union work is inferior, nor that coolie, rat shop, filthy tenement house work is non-union. While the statement of the label must fairly be said to be a condemnation of a certain class of work, yet it is because the work is unfit and inferior of itself, not because it is non-union. In short, the label cannot be construed as charging that any work good in part, is bad; it states no more than that the organization is opposed to bad work because it is bad; and it would probably be conducive to the health and safety of the smokers in general if the classes of goods enumearted in the label were entirely driven from the market, for it appears that such classes of goods as known to the cigarist's trade are not only inferior both in quality and material and mode of manufacture, but also that diseases and contamination of various and serious nature are not infrequently communicated through their medium. However this may be, there is nothing upon the label which is capable of

being construed into a charge that non-union goods are such goods or are inferior goods.   Should an individual vendor of cigars place upon cigar boxes a label stating that "the cigars within this box are made by a clean first-class workman, a workman opposed to inferior rat shop, coolie, prison or filthy tenement house workmanship, therefore I recommend my cigars to all smokers throughout the world," we find difficulty in conceiving how it could be rightfully maintained that the announcement would be against public policy.  Firstly, he announces how his goods are made, which he may do; secondly, he announces as reason why his goods are desirable, because made by a workman sufficiently advanced in intelligence to know good work, and in moral instincts to condemn bad; lastly, he recommends his goods for the reason given, all of which is lawful and proper.   The fact that otherwise legitimate methods are sought to be employed by an organization is no reason for branding such methods as illegitimate, especially in a state whereof the policy is as in Ohio, to secure to the organization as such, all rights in the matter which are possessed by individuals as such.   Not only the rights secured to individuals, but rights greater and broader than individual rights, for no individual has the right to proprietary ownership in a label or mark, unless he use it about his business, while such right is given to labor unions by the state in question entirely independent of the conducting of a business by them.

While we regret the opposing of our opinion to that of so high a court, yet, for the reason given, we must decline to regard the Pennsylvania decision as an authority in Ohio upon the question presented.

There remains the question:   Does the statute contemplate the adoption and protection of a device or emblem so extensive in parts as the one at bar?

Labor organizations, so far as they by rightful methods seek the promotion of the welfare of the working classes, the advancement and development of the intelligence of members, and consequently the capacity to produce work higher in grade of excellence, are to be encouraged and commended; a standard of good work can be established only by ascertaining and condemning bad; no man can favor the good without condemning the bad; the act of selection alone is a discrimination against the inferior, and a commendation of the superior; an organization cannot purpose to maintain the good without a purpose to assail the bad; opposition to the bad is an inseparable attribute of an effort to maintain the good.

The label announces the organization to be opposed to inferior goods of certain classes, classes known to the trade as inferior.   This is essentially its position if it favor superior goods.   This should be its position. This is the only position that could be taken which ethics would justify, the only position which is consistent with a policy of advancement and improvement, the policy of the public should be to sustain this position; the establishment of good statutes and the annihilation of bad is the end and purpose of all public measures and public movements, because the public is benefited by the obtaining of the good instead of the bad.

The most evident intent of the statute is, as therein said, "that the label shall designate the products of the labor of members of the union." This it can only do by stating, as it does state, 'that the cigars were made by a member of the union." How else could it designate them as the product of the labor of members?   The statement "by a first-class workman" is no more than a recommendation of the goods, proper to appear on any label.   The statement that "the organization is opposed to inferior, rat shop, coolie, prison and filthy tenement house workmanship" is the statement of a policy, a policy that we think lawful—one that all who favor the establishment of a proper standard must maintain; in the

statement of it we see no evil. We are of the opinion that the lable at bar is entitled to protection, as the "label" provided for by the statute.

The defendant's conduct cannot be justified; he boldly admits an act of piracy and vandalism, a notorious and open violation of a penal statute of the state, the perpetration of an outrageous deception and fraud upon the public, and yet seeks to defend by pleading that it is against public policy to allow a labor union to label its members' work with a statement of the truth; not objecting that any statement upon the label is untrue, but that being true, it is against the welfare of the public to admit its use.

We are slow to say that the law has no check for methods such as his.

The injunction will issue as prayed for in the bill.

Peck & Shaffer, for plaintiff.

Edward Dienst, for defendant.